# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DIRECTV, INC.,** : |  |
|         **Plaintiff** : |  |
| : |  |
|         vs. | **: CIVIL ACTION NO. 3:CV-05-825** |
| | **: (JUDGE VANASKIE)** |
| **ROBERT MOHER,** : |  |
|         **Defendant** : |  |

## MEMORANDUM

Plaintiff DIRECTV, Inc. commenced this action against pro se Defendant Robert Moher, alleging that Mr. Moher purchased, distributed, and used equipment designed to access DIRECTV's satellite television programming without authorization in violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 605, the Electronics Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511-12, and 18 Pa. Cons. Stat. Ann. § 910. (Dkt. Entry 1.) DIRECTV has moved for summary judgment, asserting that Mr. Moher has "effectively admitted" each of its allegations. (Pl.'s Br. Supp. Summ. J. (Dkt. Entry 133) at 1.) In fact, Mr. Moher has denied that he illegally accessed DIRECTV's programming or knowingly distributed illegal equipment. Because there exist genuine issues of facts material to whether Mr. Moher used or distributed equipment designed to access DIRECTV's satellite television programming without authorization, DIRECTV's motion will be denied.

**I. BACKGROUND**

    **A. Factual Background**

Mr. Moher purchased a DIRECTV system for his residence in November of 1999. (Pl.'s Statement of Material Facts ("SMF") (Dkt. Entry 132-3) ¶ 16.[1]) A DIRECTV system includes: (1) a satellite dish for receiving DIRECTV's satellite transmissions, (2) a DIRECTV integrated receiver/decoder for converting the satellite transmission into viewable programming, and (3) a DIRECTV Access Card for controlling which DIRECTV channels are viewable. (Aff. James Whalen, Pl.'s Mot. Summ. J. Ex. A (Dkt. Entry 134-2) ¶ 5.) Mr. Moher activated an account with DIRECTV on April 11, 2000. (Pl.'s Mot. Summ. J. Ex. K (Dkt. Entry 134-19).) The account has remained active through September 2005. (Id.)

In early 2001, Mr. Moher purchased a second DIRECTV system for his father's summer home at a flea market. (Pl.'s SMF (Dkt. Entry 132-3) ¶ 1.) The seller of the system informed Mr. Moher that the DIRECTV Access Card was damaged and told him he "could buy a device on the internet to repair the card." (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 31.) Mr. Moher installed the system at his father's summer

---

[1] Mr. Moher did not respond to DIRECTV's Statement of Material Facts as required by Local Rule 56.1. Where Mr. Moher's affidavit, deposition, or answers to DIRECTV's interrogatories differ from DIRECTV's Statement of Material Facts in a material way, citation is made directly to the discovery documents. See Fed. R. Civ. P. 56(c), (e). Otherwise, the fact asserted in DIRECTV's Local Rule 56.1 Statement is regarded as true.

home, but it did not work because of the damaged access card.  (Id. at 34-35, 38.)

In April 2001, Mr. Moher purchased a "boot loader" from a website to repair the damaged access card in accordance with the flea market salesman's advice.  (Pl.'s SMF (Dkt. Entry 132-3) ¶ 2.)  A boot loader circumvents DIRECTV's electronic countermeasures designed to disable access cards that have been modified without DIRECTV's authorization.[2]  (Aff. James Whalen, Pl.'s Mot. Summ. J. Ex. A (Dkt. Entry 134-2) ¶¶ 12, 26.)  Mr. Moher stated that he never received the boot loader.  (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 38-39.)

FedEx Express records indicate that the boot loader was delivered to Mr. Moher's residence on April 24, 2001.  (Pl.'s Mot. Summ. J. Ex. G (Dkt. Entry 134-15).)  Receipt of the package was signed by "J.ROCHE," who is not identified in the summary judgment record.[3]  (Id.)  Mr. Moher testified that he never received the FedEx Express shipment.  (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 38-39.)  He claimed that he disposed of the second DIRECTV system "about two months after [he] didn't receive

---

[2] A DIRECTV Access Card can be modified to gain access to DIRECTV programming without payment.  (Aff. James Whalen, Pl.'s Mot. Summ. J. Ex. A (Dkt. Entry 134-2) ¶ 17.)  In January 2001, DIRECTV released an electronic countermeasure that rendered many modified DIRECTV Access cards inoperable.  (Id. ¶ 26.)  It is unclear whether the "damaged" DIRECTV Access Card that Mr. Moher purchased was disabled by this event.

[3] Mr. Moher stated that only the Moher family could receive mail at his residence. (Def.'s Answers to Pl.'s Interrogs., Pl.'s Mot. Summ. J. Ex. B (Dkt. Entry 134-9) No. 21.)

3

the boot loader." (Id. at 52.)

Records from PayPal, Inc. from February 2001 to March 2002, show that Mr. Moher purchased other equipment that can be used to gain unauthorized access to DIRECTV's programming, including a Smart Card Passive Emulator, a SU2 Boot Code AtMel AT90S2, a Terminator Emulator, and an Avr4.[4]  (Pl.'s Mot. Summ. J. Ex. I (Dkt. Entry 134-17); see also Aff. James Whalen, Pl.'s Mot. Summ. J. Ex. A (Dkt. Entry 134-2) (explaining how the devices work); Pl.'s Supp. Expert Report, Pl.'s Mot. Summ. J. Ex. E (Dkt. Entry 134-12) (same).)  Mr. Moher did not recall purchasing the other items listed on the PayPal records. (Def.'s Answers to Pl.'s Second Set of Interrogs., Pl.'s Mot. Summ. J. Ex. D (Dkt. Entry 134-11) No. 1.)

United Parcel Service records indicate that the Terminator Emulator was delivered to Mr. Moher's residence on May 19, 2001.  (Pl.'s Mot. Summ. J. Ex. H (Dkt. Entry 134-16).) Mr. Moher testified that he did not order the Terminator Emulator.  (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 45-50.)  Rather, a co-worker, whose name he no longer recalls, paid him cash to allow him to use his computer and credit card to purchase the emulator.  (Id.)  Mr. Moher said that the package was left at his door and he

---

[4] DIRECTV did not allege that Mr. Moher purchased or used the Smart Card Passive Emulator, SU2 Boot Code AtMel AT90S2, or Avr4 in its complaint. (Compl. (Dkt. Entry 1) ¶ 20.)  Most of DIRECTV"s arguments focus on Mr. Moher's alleged purchase and possession of the boot loader and Terminator Emulator.

gave it to his co-worker without knowing what was inside the package. (Id.)

Mr. Moher also visited websites that discuss the unauthorized interception of DIRECTV programming. (Pl.'s SMF (Dkt. Entry 132-3) ¶ 15.) He said that he visited these websites for legal advice in this case. (Def.'s Answers to Pl.'s Second Set of Interrogatories, Pl.'s Mot. Summ. J. Ex. D (Dkt. Entry 134-11) Nos. 3-5.)

Mr. Moher has testified that he did not purchase a device for the purpose of obtaining DIRECTV programming without paying for it. (Def.'s Answers to Pl.'s Interrogs., Pl.'s Mot. Summ. J. Ex. B (Dkt. Entry 134-9) No. 12.) He also testified that he never watched DIRECTV programming without paying for it. (Id. No. 4; Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 66-67.)

**B. Procedural Background**

DIRECTV filed a six-count complaint against Mr. Moher and other defendants on January 13, 2003. (Dkt. Entry 1.) In counts one and two, DIRECTV alleges that Mr. Moher intercepted its programming without authorization in violation of the FCA, 47 U.S.C. § 605(a), and the ECPA, 18 U.S.C. § 2511, respectively. (Id. ¶¶ 29-38.) In count three, DIRECTV asserts that Mr. Moher distributed or possessed an electronic communication intercepting device that was transported through interstate commerce in violation of 18 U.S.C. § 2512 of the ECPA. (Id. ¶¶ 39-42.) In count four, DIRECTV claims that Mr. Moher knowingly manufactured, assembled, or modified a device, knowing or having reason to

know that the device is primarily of assistance in the unauthorized interception of DIRECTV's programming in violation of 47 U.S.C. § 605(e)(4). (Id. ¶¶ 43-46.) In count five, DIRECTV alleges that Mr. Moher knowingly possessed an unlawful device for theft of DIRECTV's programming in violation of 18 Pa. Cons. Stat. Ann. § 910. (Id. ¶¶ 47-50.) In count six, DIRECTV claims that Mr. Moher unlawfully converted its property for his own commercial use and benefit. (Id. ¶¶ 51-54.)

On October 11, 2005, DIRECTV moved to withdraw counts three and six of the complaint. (Dkt. Entry 129.) The Court subsequently granted DIRECTV's motion. (Dkt. Entry 130.)

DIRECTV filed a motion for summary judgment along with a supporting brief on October 19, 2005. (Dkt. Entry 131.) On November 28, 2005, Mr. Moher filed "Objections to Plaintiff's Evidence in Opposition to [DIRECTV's] Motion for Summary Judgment." (Dkt. Entry 141.) In his objections, Mr. Moher primarily challenges the relevance of DIRECTV's summary judgment exhibits, claiming that the exhibits may indicate possession of piracy devices, but do not show actual interception of DIRECTV's programming. (Id. ¶ 1.) DIRECTV has filed a brief in reply to Mr. Moher's arguments. (Dkt. Entry 146.)

**II. DISCUSSION**

   **A. Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires

the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. The Admissibility of DIRECTV's Summary Judgment Exhibits**

Mr. Moher asserts that most of DIRECTV's summary judgment exhibits are irrelevant because the exhibits merely show that he possessed devices capable of intercepting DIRECTV's programming, but not that he actually intercepted DIRECTV's programming. (Pl.'s Objections to Pl.'s Mot. Summ J. (Dkt. Entry 141).)   Mr. Moher appears to be arguing that circumstantial evidence is inadmissible, which is clearly not true.  Cf. United States v. Giuliano, 263 F.2d 582, 584 (3d Cir. 1959) (holding that circumstantial evidence alone is sufficient to sustain a criminal conviction).

Evidence is relevant, and therefore admissible under Rule 402 of the Federal Rules of Evidence, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Evidence that Mr. Moher purchased, received,[5]

---

[5]  Mr. Moher also argues that the delivery records are not relevant because they do not prove he received the shipped items.  The records indicate that the items were shipped to his residence.  This is circumstantial evidence that Mr. Moher ultimately possessed the items.  Whether Mr. Moher possessed equipment that could access DIRECTV's programming without authorization is relevant to many of DIRECTV's claims.

Mr. Moher also asserts that the Terminator Emulator packing slip is a forgery.  (Pl.'s

researched, or possessed a device capable of granting him access to unauthorized DIRECTV programming tends to make it more probable that Mr. Moher accessed unauthorized DIRECTV programming than it would be without the evidence. The evidence is therefore relevant to whether Mr. Moher intercepted DIRECTV's programming. Consequently, the Court will deny Mr. Moher's request to strike DIRECTV's summary judgment exhibits.[6]

### C. Whether Mr. Moher Received or Intercepted DIRECTV Programming

Under counts one, two, and five of its complaint, DIRECTV claims that Mr. Moher received its programming without authorization in violation of the FCA, 47 U.S.C. § 605(a),[7]

---

Mot. Summ. J. Ex. F (Dkt. Entry 134-14.) Mr. Moher failed to submit any evidence undermining the authenticity of the packing slip. His objection will therefore be denied.

[6] Mr. Moher also argues that the custodians of the business records in this case did not have personal knowledge of his records. The disputed records meet the admissibility requirements of regularly conducted business activities under Rules 803(6) and 902(11) of the Federal Rules of Evidence.

[7] The FCA provides that "no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communications by radio and use such communications . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). The FCA provides a private cause of action for companies aggrieved by the unauthorized use of their signal. 47 U.S.C. § 605(e)(3)(A).

9

the ECPA, 18 U.S.C. § 2511,[8] and 18 Pa. Cons. Stat. Ann. § 910, respectively.[9]  DIRECTV claims that it is entitled to summary judgment because Mr. Moher has admitted that he received or intercepted its programming without authorization.  (Pl.'s Br. Supp. Mot. Summ. J. (Dkt. Entry 133) at 8-9.)

While DIRECTV has presented sufficient evidence that Mr. Moher <u>purchased</u> devices that could be used to attain unauthorized access to DIRECTV programming, a genuine issue remains whether Mr. Moher <u>used</u> the devices to attain unauthorized access to DIRECTV programming.  Cf. <u>DirecTV, Inc. v. Brasswell</u>, No. 4:03-CV-330-A, 2004 WL 1562964, at *2 (N.D. Tex. July 12, 2004) (denying plaintiff's motion for summary judgment where plaintiff established that defendant possessed an unlawful device, but did not establish "that defendant used a device to intercept plaintiff's programming").  In his deposition, answers to interrogatories, and affidavit, Mr. Moher consistently denied that he viewed any programming without paying for it.  (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 66-67; Def.'s Answers to Pl.'s Interrogs., Pl.'s Mot. Summ. J. Ex. B (Dkt. Entry 134-9) No. 4; Aff. Mr. Moher (Dkt. Entry 154) ¶ 5.)  He also explained how

---

[8]  Under the ECPA, "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" may be subject to suit.  18 U.S.C. § 2511(1).

[9]  An aggrieved party may bring a civil action under 18 Pa. Cons. Stat. Ann. § 910 against any person who "makes, distributes, possesses, uses or assembles an unlawful telecommunication device."

purchase records may exist for piracy devices he did not use.[10]  While the Court may be skeptical of Mr. Moher's testimony, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A reasonable fact finder could conclude that Mr. Moher did not unlawfully access DIRECTV programming if they found his testimony credible.  Consequently, summary judgment will be denied on counts one, two, and five of DIRECTV's complaint.

### D. Whether Mr. Moher Modified or Distributed an Unlawful Device

DIRECTV's final claim is that Mr. Moher violated section 605(e)(4) of the FCA, by modifying DIRECTV access cards and by distributing devices that were primarily of assistance in receiving unauthorized DIRECTV programming.  Under section 605(e)(4) of the FCA, an aggrieved company may seek penalties against "[a]ny person who

---

[10] Specifically, Mr. Moher stated that he purchased a boot loader but never received the device. (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 38-39.)  Indeed, the FedEx Express records indicate that someone other than Mr. Moher received the boot loader (though a reasonable fact finder could still conclude that Mr. Moher ultimately came into possession of the boot loader).  Additionally, Mr. Moher testified that he allowed a co-worker to use his computer and credit card to make purchases on the internet. (Id. at 45-50.)  This could perhaps explain why there are financial records for purchases that Mr. Moher does not recall.  To say the least, the fact finder would have to find Mr. Moher extraordinarily credible to accept his account.  The Court, however, is bound to believe Mr. Moher's evidence at this stage of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming." DIRECTV argues that is entitled to judgment on this count because it has presented sufficient evidence that Mr. Moher modified a DIRECTV Access Card and distributed a Terminator Emulator to a co-worker. (Pl.'s Br. Supp. Summ. J. (Dkt. Entry 133) at 9.)

Based on Mr. Moher's deposition and answers to interrogatories, there is sufficient evidence to withstand summary adjudication of liability. Regarding Mr. Moher's alleged modification of a DIRECTV Access Card, Mr. Moher has denied that he ever obtained DIRECTV programming without authorization. (See Pl.'s Answers to Interrogs., Pl.'s Mot. Summ. J. Ex. B (Dkt. Entry 134-9) No. 4.) While DIRECTV has presented evidence casting doubt on Mr. Moher's credibility on this point, the fact finder ultimately must decide whether he is believable. Liberty Lobby, 477 U.S. at 255.

Likewise, Mr. Moher testified that he did not know that he delivered a Terminator Emulator to his co-worker. (Tr. of Mr. Moher's Dep., Pl.'s Mot. Summ. J. Ex. C (Dkt. Entry 134-10) at 45-50.) Thus, DIRECTV has failed to show an absence of a genuine issue concerning whether Mr. Moher knew he was distributing a device that was primarily of assistance in the unauthorized interception of DIRECTV's programming as required under 47 U.S.C. § 605(e)(4). Consequently, DIRECTV's motion for summary judgment on this

12

count will also be denied.[11]

      An appropriate Order follows.

                                      **s/ Thomas I. Vanaskie**
                                      Thomas I. Vanaskie
                                      United States District Judge

---

[11] It does not appear that a jury trial demand has been made in this case. That fact, of course, does not alter the analysis on the summary judgment motion. This Court, if it is the fact finder, can resolve credibility issues only after having the opportunity to both observe the witnesses and consider the documentary evidence in light of the entire record.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DIRECTV, INC.,** : | |
|        **Plaintiff** : | |
| : | |
|     **vs.** : | **CIVIL ACTION NO. 3:CV-05-825** |
| : | **(JUDGE VANASKIE)** |
| **ROBERT MOHER,** : | |
|        **Defendant** : | |

## ORDER

**NOW, THIS 29th DAY OF MARCH, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Dkt. Entry 132) is **DENIED**.

2. A telephonic scheduling conference will be conducted on April 19, 2007, at 1:00 p.m. Counsel for Plaintiff is responsible for placing the call to 570-207-5720, and all parties shall be ready to proceed before the undersigned is contacted.

                                         **s/ Thomas I. Vanaskie**
                                         Thomas I. Vanaskie
                                         United States District Judge